Margaret M. **BAILEY,** Appellant,

v.

Mel **GREENBERG,** et al., Appellees.

No. 85–490.

District of Columbia Court of Appeals.

Argued April 10, 1986.
Decided Oct. 29, 1986.

Donald L. Mooers, Washington, D.C., was on the brief for appellant.

Austin F. Canfield, Jr., Washington, D.C., for appellees.

Before PRYOR, Chief Judge, and FERREN and ROGERS, Associate Judges.

ROGERS, Associate Judge:

Appellant Margaret M. Bailey brought suit on January 27, 1984, against appellees Mel Greenberg and the Bradford Company

(hereinafter Greenberg) for negligence and damages resulting from injuries she had suffered after falling on Greenberg's property on July 30, 1980. She alleged Greenberg had misrepresented the identity of his insurer, and, through his agent insurance company, lulled her into not filing suit earlier, and so had damaged her "in a substantial amount yet to be determined." The trial court granted summary judgment to Greenberg on the ground that Bailey's cause of action was barred by the statute of limitations. D.C.Code § 12–301(8) (1981). We reverse.

Viewing all inferences that can be drawn favorably to Bailey,[1] the evidence showed that she fell and injured her left foot on July 30, 1980, while looking for her real estate clients at the Lonsdale Apartments. Shortly after her fall, Bailey ascertained that Greenberg was the owner of the Lonsdale Apartments and informed him about her injuries. He told her to contact the Insurance Company of North America, saying "INA will pay the damages incurred in the accident." Bailey contacted INA and received insurance claim forms from INA on September 3, 1980. On October 3, 1980, she returned the completed forms along with her physician's report. INA assigned her a claim number, and told her that her claim would be processed and payment made.

Approximately two years later, Bailey retained attorney Donald L. Mooers to pursue her insurance claim. Mooers wrote Greenberg on December 31, 1982, to inquire about the status of Bailey's claim. As a result, Mooers received several telephone calls from INA employees "assuring [him] that [Bailey's claim] was being routinely reviewed and processed by INA for payment of [her] claims." On April 9, 1983, he wrote a certified letter to INA attaching a second physician's report regarding a subsequent fall by Bailey as a

result of the July 30 fall, and was again assured by INA that Bailey's claim was being processed for payment. However, on May 26, 1983, INA informed Mooers that Bailey's claim file had been misplaced and it was necessary to obtain a duplicate file from the Philadelphia office "so that [her] claims could be finalized and payment made to her." Thereafter, Mooers spoke with INA employees on several occasions; each time he was told that the duplicate file had not yet been received, but that "INA did recognize [Bailey's claims] for her injuries and that payment would be processed as soon as the duplicate file was received from the INA Philadelphia office." His offer to submit a copy of his entire file to INA was rejected as not necessary.

By letter dated August 2, 1983, INA informed Mooers it was not Greenberg's insurer on July 30, 1980, the day Bailey fell, and rejected Bailey's insurance claim. Bailey filed suit against Greenberg on January 27, 1984. In February 1984, Greenberg's attorney wrote Mooers that the proper insurance company to defend Bailey's suit was still being determined. Greenberg stated in his May 1984 answers to Bailey's interrogatories, that INA was his insurer and his policy with INA ran from March 30, 1980 through March 30, 1981.[2]

## I

■ An action alleging negligence and seeking damages for personal injury must be brought within three years of the time the action accrued. *Burns v. Bell,* 409 A.2d 614, 615 (D.C.1979); D.C.Code § 12–301(8). "In the more commonplace negligence actions, where the fact of injury is readily discernible, the cause of action accrues when the injury occurs." *Burns v. Bell, supra,* 409 A.2d at 615.

---

1. *See Spellman v. American Security Bank,* 504 A.2d 1119, 1122 (D.C.1986) (per curiam).

2. At the hearing on the summary judgment motion, Greenberg's attorney acknowledged he was being paid by INA and that he "assume[d] ... that there may be coverage or that there is coverage...."

■ Bailey fell on Greenberg's property on July 30, 1980. She was immediately aware of her injury; the pain in her foot and leg prevented her from moving from the place she had fallen for "some time." Her physician x-rayed her foot the following day and informed her that she had "a fractured left foot and other injuries." Since her fall she has been unable to climb stairs and to continue working as a real estate agent. Therefore, barring circumstances which would permit her to claim that either the statute of limitations was tolled or Greenberg is estopped from asserting it, Bailey's right to sue him for negligence expired on July 30, 1983.[3] *See William J. Davis v. Young,* 412 A.2d 1187, 1191–92 & n. 15 (D.C.1980).

## II

Bailey contends that Greenberg, through INA, "lulled" her into not filing suit within the three-year limitation period through "the appearance that it was processing her claims for payment, without the necessity of litigation (at INA's request)." In *Hornblower v. George Washington University,* 31 App.D.C. 64 (1908), the Court of Appeals for the District of Columbia Circuit held that a defendant cannot assert

> the bar of the statute of limitations, if it appears [the defendant] has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run ... [The] defendant must have done something that amounted to an affirmative inducement to plaintiffs to delay bringing action.

*Id.* at 75.

*Hornblower* and succeeding cases in his jurisdiction [4] have interpreted this principle narrowly. Thus, in *Hornblower,* the defendant had incurred a substantial debt to plaintiffs and plaintiffs, according to their counsel's opening statement to the jury, being reluctant to file suit and thereby make public that defendant was not paying its bills, obtained a promise from the defendant to submit the matter to arbitration. *Id.* at 66. The defendant sent plaintiffs a letter informing them that the bill had been submitted for adjustment. At the close of plaintiffs' counsel's opening statement, the trial court directed a verdict for the defendant. On appeal the court affirmed, holding that plaintiffs had caused the delay and inaction and there was no evidence to show the defendant made any promise or did any act amounting to an estoppel. The court rejected plaintiffs' assertion the letter brought the case within English and American decisions finding an estoppel.

> A careful examination of the decisions cited discloses that in each case the writing relied upon acknowledged a debt due from the writer. This seems to be the test. There must be some statement that is equivalent to an acknowledgement of indebtedness. In fact, the rule announced in this country seems to go further and require that there shall not only be an acknowledgement of indebtedness, but a promise to pay.

*Id.* at 73. The court also held the plaintiffs failed to show the agreement to submit to

---

**3.** Bailey fell on two additional occasions, in October and December, 1981, due allegedly to the weakened condition of her previously injured foot and leg; the first time she fractured her right wrist, and the second time she sustained several bruises and possibly fractured ribs. Therefore, she urges that the manifestation rule is applicable to her lawsuit. That rule has been applied primarily where a person is exposed to a toxic substance, the injury from which does not manifest itself as a disease for several years. *See, e.g., Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); *Wilson v. Johns-Manville Sales Corp.,* 221 U.S. App.D.C. 337, 342–43, 684 F.2d 111 (1982). Because Bailey's injuries subsequent to July 30 could have been foreseen from the weakened condition of her left leg, they do not fall within the manifestation rule. *Cf. Burns v. Bell, supra,* 409 A.2d at 615 (medical malpractice).

**4.** *See William J. Davis v. Young, supra,* 412 A.2d at 1192; *McCloskey & Co. v. Dickinson,* 56 A.2d 442, 444 & n. 1 (D.C.1947); *Brown v. Lamb,* 134 U.S.App.D.C. 314, 315 & n. 3, 414 F.2d 1210, 1211 & n. 3 (1969).

arbitration had induced them not to file suit since they "took no steps toward having the matter submitted, and did not insist upon the defendant's submission ... " and made "no affirmative showing the defendant did anything to prevent the arbitration." *Id.* at 75.

Similarly, in *Grass v. Eiker*, 135 A.2d 153 (D.C.1957), the court, in reviewing an appeal from a directed verdict, rejected a claim of estoppel or waiver where the defendant acknowledged the debt in writing by listing it as a liability on a report filed with the Securities & Exchange Commission, and orally by saying "he had other uses for the money and just couldn't pay [the plaintiff]." *Id.* at 153, 154. This evidence was insufficient to estop the defendant from pleading the statute, because

> [a]t most it represents a bare verbal promise to pay the debt at a vague future time with an implied request for forbearance on the part of [the plaintiff] until [the defendant] could secure more funds. [The defendant] never agreed to waive the statute nor did he ask [the plaintiff] to refrain from bringing suit.

*Id. See also Brown v. Lamb, supra,* 134 U.S.App.D.C. at 316, 414 F.2d at 1212 (no estoppel from raising bar of statute of limitations where attorney could not have reasonably relied on client's informal assurances for several years that legal fees would be paid).

The cases in which this court has found lulling also are illustrative. In *William J. Davis, Inc. v. Young, supra,* 412 A.2d 1187, the defendant-employer reduced the plaintiff-employee's salary by decreasing the recorded number of hours worked following an increase in the minimum wage. The plaintiff was unaware of the reduction, although his pay stub reflected the decrease in hours, because he had focused only on the total amount of his wages, which never decreased. The court held the defendant's affirmative actions in advising the plaintiff, an "unsophisticated employee," that it was unnecessary to report the hours he worked and in not informing him

of the increase in the minimum wage or the decrease of his hours, lulled the plaintiff into not filing suit until part of his back wages claim had been barred by the statute of limitations. *Id.* at 1192–93. In *McCloskey & Co. v. Dickinson, supra,* 56 A.2d at 444, on which Bailey relies, the court held the defendant-employer had lulled the plaintiff-employee by informing him that his claim for overtime pay had been "finally settled by the Wage & Hour Division and a report made to the Maritime Commission[, and] that the company was awaiting their approval 'so that payments can be made.' " The defendant promised to notify the plaintiff of the Commission's action, but never did. The court found it entirely reasonable for the plaintiff to rely on the words and conduct of defendant and not file suit while the Division and Commission were considering his case. Thus, *McCloskey* falls within the guidelines enunciated by *Hornblower:* there had been an acknowledgement of indebtedness and (virtually) a promise to pay.

This court has not decided what actions by an insurance company will constitute "lulling." In *Roumel v. Niagara Fire Insurance Co.,* 225 A.2d 658, 660 (D.C.1967), the court stated in dictum that if an insurance company sought to avoid payment by prolonging negotiations beyond the contractual limitations period, such conduct would toll the running of the contractual period. *See also Centennial Insurance Co. v. Dowd's, Inc.,* 306 A.2d 648, 651 (D.C. 1973). However, *Roumel* did not define what would constitute sufficient negotiations between the parties to toll the contractual period, or indicate whether a different standard would apply to a statutory limitations period.

The general rule is that an insurance company is not deemed to have waived a contractual limitations period, and is not estopped to assert the limitations period as a bar to a claim, unless the company has conceded liability and some dis-

cussion of a settlement offer has occurred.[5] *See Scheetz v. IMT Insurance Co., supra* note 5; *Zuckerman v. Transamerica Insurance Co.*, 133 Ariz. 139, 650 P.2d 441 (1982); *Hounshell v. American States Insurance Co., supra* note 5; *Brocato v. Sun Underwriters Insurance Co. of New York*, 219 La. 495, 53 So.2d 246 (1951); *Commercial Union Insurance Co. v. F.R.P. Co.*, 172 Ga.App. 244, 322 S.E.2d 915 (1984); *Peters v. Home Insurance Co.*, 11 Mich.App. 627, 162 N.W.2d 91 (1968); *but see Anderson v. State Farm Fire and Casualty Co.*, 583 P.2d 101 (Utah 1978) (negotiations regarding liability sufficient to find waiver); *Commonwealth v. Transamerica Insurance Co.*, 462 Pa. 268, 341 A.2d 74 (1975) (ongoing investigation of claim and absence of denial of liability sufficient); *Trinity Universal Insurance Co. v. Howeth*, 419 S.W.2d 704 (Texas Civ.App. 1967) (tentative denial of liability and continuing negotiations as to liability sufficient).[6] In these cases no estoppel or waiver was found either because the inducement by the insurance company not to file suit ended well before the limitations period expired,[7] or the mere pendency of a claim, without a concrete indication that it could be settled amicably, was sufficient to warrant a finding of waiver or estoppel.[8] Cases involving statutory limitations periods follow the same guidelines, but the courts are even more reluctant to find waiver or estoppel. *See Insurance Co. v. Board of Education, supra; Huth v. B.P. Oil, Inc.*, 555 F.Supp. 191 (D.Md.1983); *Johnson v. Kentner, supra; Gagner v. Strekouras*, 423 A.2d 1168 (R.I.1980). Although a claimant's representation by an attorney is not dispositive in determining whether an insurance company is estopped because of misleading statements from asserting the statute of limitations, *Sumrall v. City of Cypress*, 258 Cal.App.2d 565, 65 Cal.Rptr. 755, 758 (1968), courts generally are reluctant to find the claimant has been misled by the insurance company where the claimant was sophisticated in business matters or had retained legal counsel. *See Aimonetto v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 365 F.2d 599, 600 (10th Cir.1966); *Peters v. St. Paul Fire & Marine Insurance Co.*, 213 F.Supp. 441 (S.D.N.Y.1963). *See also Brown v. Lamb,*

**5.** As applied to insurance cases, waiver and estoppel are two distinct concepts. A waiver may be express or implied, and is a unilateral, voluntary and intentional relinquishment of the right to assert either a contractual or statutory limitations provision by the insurer. *See Insurance Co. v. Board of Education*, 196 F.2d 901, 904 (10th Cir.1952); *Scheetz v. IMT Insurance Co.*, 324 N.W.2d 302, 305 (Iowa 1982) (en banc); *Hounshell v. American States Insurance Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311, 313 (1981); *Salloum Foods & Liquor v. Parliament Insurance Co.*, 69 Ill.App.3d 422, 26 Ill.Dec. 399, 404, 388 N.E.2d 23, 27 (1979). Equitable estoppel prevents the insurance company from asserting the statute of limitations where the company has made misleading representations to the insured and the insured has relied on those representations to his or her detriment. *See Johnson v. Kentner*, 71 Or.App. 61, 691 P.2d 499, 506 (1984); *Salloum Foods & Liquor v. Parliament Insurance Co., supra*, 388 N.E.2d at 28; *Scheetz v. IMT Insurance Co., supra*, 324 N.W.2d at 305. Detrimental reliance is not a necessary element to waiver. *Salloum Foods & Liquor v. Parliament Insurance Co., supra*, 388 N.E.2d at 28. *See* 29 A.L.R.2d 636 (1953).

**6.** The cases rejecting the general rule deemed a contractual limitations provision to be more easily waived by an insurance company than a statutory limitations period. *See Anderson v. State Farm, supra*, 583 P.2d at 103 (contractual limitation period shorter than statutory period is disfavored and to be strictly construed); *Schafer v. Buckeye Union Insurance Co.*, 178 Ind.App. 70, 381 N.E.2d 519, 522 (1979) (same); *Commonwealth v. Transamerica Insurance Co., supra*, 341 A.2d at 76; *Trinity Universal Insurance Co. v. Howeth, supra*, 419 S.W.2d at 706 (contractual limitation is a forfeiture, and any evidence of a waiver is sufficient to ignore the provision).

**7.** *See Salloum Foods & Liquor v. Parliament Insurance Co., supra*, 388 N.E.2d at 29 (4½ months remaining before contractual limitations period expired); *Doll v. Farmers Automobile Insurance Ass'n*, 54 Ill.App.3d 868, 12 Ill. Dec. 635, 638, 370 N.E.2d 258, 261 (1977) (5 months remaining before contractual limitations period expired).

**8.** *Broadview Savings & Loan Co. v. Buckeye Union Ins. Co.*, 70 Ohio St.2d 47, 434 N.E.2d 1092, 1095 (1982); *Blum v. Cherokee Ins. Co.*, 336 So.2d 894, 898 (La.App.1976).

*supra*, 134 U.S.App.D.C. at 316, 414 F.2d at 1212; *accord, Jordan v. Morgan*, 252 Md. 122, 249 A.2d 124, 129–130 (1969).

■ Expiration of the statute of limitations is a question of law, but certain facts must be determined before the question of law can be reached. *Spellman v. American Security Bank, supra*, 504 A.2d at 1123 (citations omitted).[9] We hold Bailey raised a material issue of fact whether Greenberg or his agent, INA, or both, lulled her into not filing suit.[10] Bailey's undisputed affidavit maintained she was told by Greenberg that INA would pay. After sending her the forms and assigning her a claim number, INA told Bailey her claim would be processed and payment made. According to her attorney's affidavit, which is also undisputed, Greenberg and INA continued such assurances to him. Greenberg had INA contact Mooers after he wrote to inquire about the status of Bailey's claim. INA twice told Mooers that her claim was being routinely reviewed and processed for payment. On several occasions INA stated it recognized her claim, and payment would be processed as soon as a duplicate file was received. Thus both Bailey and Mooers had received a virtual promise to pay Bailey's claim, *see McCloskey & Co. v. Dickinson, supra*, 56 A.2d at 444–45, from Greenberg and INA.

Although *Hornblower* and its progeny require concrete evidence to prove lulling, and an attorney is subject to a different standard than a layperson with respect to knowledge of statutes of limitations,[11] and Bailey would be bound by her attorney's action or inaction. *See, e.g., Lynch v. Meridian Hill Studio Apts., supra*, 491 A.2d at 519 (attorney's mistake of law, resulting in summary judgment against client, not a basis for relief under Super.Ct.Civ.R. 60(b)(1), and cases cited therein), we think Bailey was entitled to prove the oral acknowledgements and admissions and the circumstances under which they were made. *See Grass v. Eiker*, 123 A.2d 613, 614–15 (D.C.1956) (reversing grant of summary judgment where "[a]lthough the probability appears slight, appellants may be able to show that the delay in enforcing their claims was induced by representations or promises of appellee accompanying the acknowledgements and admissions."); *International Underwriters v. Boyle*, 365 A.2d 779, 782 (D.C.1976) ("summary judgment is appropriate only where 'it is quite clear what the truth is ...'" (citations omitted)).[12] Were she able to show the delay in filing suit was induced as a result of such representations, Greenberg would be estopped from pleading the statute of limitations as a bar.[13] *Id.* Accordingly, summary judgment was precluded.

---

9. In reviewing the grant of summary judgment, this court conducts an independent review of the record. *Id.* at 1122; *Burt v. First American Bank*, 490 A.2d 182, 184 (D.C.1985); *Phenix-Georgetown, Inc. v. Chas. H. Tompkins Co.*, 477 A.2d 215, 221 (D.C.1984); *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983).

10. See APPLEMAN, INSURANCE LAW AND PRACTICE § 8871, at 322 (1981) (insured can be liable for agent's wrongdoing if insured participated therein).

11. *See Benton v. Vinson, Elkins, Weems & Searls*, 255 F.2d 299, 301 (2d Cir.), *cert. denied*, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958); *Aetna Life Insurance Co. v. Moyer*, 113 F.2d 974, 981–82 (3d Cir.1940); *Jackson v. Andco Farms*, 130 Cal.App.3d 475, 181 Cal.Rptr. 815, 818 (1982). *See generally Lynch v. Meridian Hill Studio Apts., Inc.*, 491 A.2d 515, 518 (D.C.1985); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 996 (D.C.1978).

12. Bailey alleges in her brief that INA asked her not to initiate litigation, and Mooers argued at the motions hearing that INA asked him to delay filing suit. Since these assertions were not included in the affidavits, we do not consider them in reviewing the grant of summary judgment. *Cloverleaf Standardbred Owners Assoc. v. National Bank of Washington*, 512 A.2d 299, 300 n. 1 (D.C.1986); *see Spellman v. American Security Bank, supra*, 504 A.2d at 1122; Super.Ct.Civ.R. 56(e).

13. Nor could he defend on the grounds of laches. *See King v. Kitchen Magic*, 391 A.2d 1184, 1187 (D.C.1978) and cases cited therein. Mooers' affidavit describes his activities prior to filing suit and Greenberg has not shown "material injury" as a result of six months delay; neither has INA.

## III

Bailey also contends that Greenberg, individually and through INA, fraudulently concealed the fact that INA was not the insurer at the time of her accident, and thereby prevented her from filing a claim with Greenberg's insurer, from attempting to settle the claim with Greenberg, and from filing suit against Greenberg. She alleges Greenberg made fraudulent misrepresentations to her that INA was his insurer, and, alternatively, that INA made fraudulent representations to her two days after the statute of limitations had expired that it was not Greenberg's insurer on the day of her accident.[14]

 If the party asserting the statute of limitations is found to have fraudulently concealed information needed to determine whether there is a basis for litigation, that party will be estopped from asserting the statute. *William J. Davis v. Young, supra,* 412 A.2d at 1191–92; *Weisberg v. Williams, Connolly & Califano, supra,* 390 A.2d at 995; *Emmett v. Eastern Dispensary & Casualty Hospital, supra,* 130 U.S. App.D.C. 50, 396 F.2d 931 (1967). But for purposes of the statute of limitations, a cause of action for fraud does not accrue until the allegedly defrauded party knows or reasonably should have known a fraud has been committed. *King v. Kitchen Magic, supra,* 391 A.2d at 1186; *Doolin v. Environmental Power, Ltd.,* 360 A.2d 493, 497 (D.C.1976); *Fontana v. Aetna Casualty & Surety Co.,* 124 U.S.App.D.C. 124, 125, 363 F.2d 297 (1966). Assuming Bailey could not have known of the alleged fraud until August 5, 1983, when Mooers received INA's August 2 letter, she still cannot claim this fraud prevented her from filing suit against Greenberg on or before July 30, 1983. Neither Greenberg nor INA prevented Bailey or her attorney from ascertaining that she could sue Greenberg for her injuries before the statute of limitations ran.[15] However, Bailey may be able to show that because she was lulled by Greenberg and INA she was prevented from filing suit against the correct insurer, who as of the time of the summary judgment proceeding had not yet been identified.

Accordingly, the judgment is reversed. *Reversed.*

---

**14.** Bailey has not raised, and we do not consider, whether she would have a cause of action against INA based on lulling if the statute of limitations has run on the *correct* carrier.

**15.** Bailey's argument that the "discovery rule," *see, e.g., Burns v. Bell, supra,* 409 A.2d at 615–17, applies is indistinguishable from this argument.