# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20-7024                                   September Term, 2020

FILED ON: MARCH 3, 2021

HOUSHANG H. MOMENIAN, ET AL.,
    APPELLANTS

v.

MICHAEL M. DAVIDSON,
    APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00828)

Before: HENDERSON, PILLARD and WILKINS, *Circuit Judges*.

## **J U D G M E N T**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

## I.

Plaintiffs Houshang Momenian, Vida Momenian and the Houshang Momenian Revocable Trust (Momenian Trust) have filed suit against the Momenians' former lawyer, defendant Michael Davidson, alleging legal malpractice and breach of fiduciary duty. In 2016, the district court dismissed the plaintiffs' amended complaint as time-barred under the applicable three-year statute of limitations. *See Momenian v. Davidson* (*Momenian I*), 209 F. Supp. 3d 288, 291 (D.D.C. 2016). We subsequently remanded the case because it was not clear to us that, assuming the truth of the amended complaint's allegations, the plaintiffs' claims were conclusively time-barred. *See*

1

*Momenian v. Davidson* (*Momenian II*), 878 F.3d 381, 384, 390–91 (D.C. Cir. 2017). After discovery, the district court granted Davidson's motion for summary judgment because "the record evidence conclusively shows that [p]laintiffs filed this action well after the statute of limitations had run." *Momenian v. Davidson* (*Momenian III*), No. 15-cv-00828, 2020 WL 999204, at *1 (D.D.C. Mar. 1, 2020). We agree and affirm the district court's judgment.

## A.

In 1990, the Momenians purchased three adjacent properties located in Southeast Washington, D.C. from Paul and Amelia Interdonato. The Momenians executed a $265,000 promissory note payable to Paul Interdonato (Promissory Note) in connection with the purchase. In 2009, the Momenians filed a lawsuit in D.C. Superior Court against the Interdonatos (2009 Litigation), claiming that the Interdonatos had failed to credit proceeds from four separate transactions against the outstanding balance of the Promissory Note. The Momenians' lawyer in the 2009 Litigation was defendant Michael Davidson. On October 12, 2010, the parties settled and dismissed with prejudice the 2009 Litigation, agreeing that the Interdonatos would credit $15,000 toward the Momenians' outstanding balance on the Promissory Note (2010 Settlement).

On May 17, 2011, Davidson sent Houshang Momenian a letter, explaining that the 2009 Litigation "was settled during mediation" and informing him that "if you desire for me to perform additional services, it will be necessary for us to enter into a new agreement which sets forth the terms and scope of the anticipated representation." Joint Appendix (J.A.) 559–60. The parties never entered into a new agreement.

Before May 7, 2012, the Momenians conveyed their title to a portion of the property at issue to the Momenian Trust. On May 7, 2012, Paul Interdonato recorded a Notice of Foreclosure against the Momenian Trust, asserting that the Momenians owed him approximately $240,000 on a different promissory note. Houshang Momenian and the Momenian Trust hired a new lawyer and filed a lawsuit against Interdonato to stop the foreclosure (2012 Litigation). The parties settled the 2012 Litigation on November 2, 2012.

On May 6, 2015, one day short of three years after Paul Interdonato recorded the Notice of Foreclosure, the Momenians filed suit in D.C. Superior Court against Davidson. Davidson removed the case to federal court. The amended complaint alleged claims of legal malpractice and breach of fiduciary duty based primarily on the Momenians' assertion that Davidson misled or failed to inform them of the full scope of the 2010 Settlement.

## B.

The applicable limitations period for the plaintiffs' claims is three years from the date the claims accrued. D.C. Code § 12-301(8); *see Momenian II*, 878 F.3d at 388. The plaintiffs filed the instant suit on May 6, 2015, and therefore their claims are untimely if they accrued before May 6, 2012. Legal malpractice claims in the District of Columbia generally accrue as soon as a plaintiff suffers injury. *Momenian II*, 878 F.3d at 388. "Plaintiffs do not dispute that they were injured by

2

[Davidson's] conduct before May 6, 2012." *Momenian III*, 2020 WL 999204, at *3. The only question is whether any rule of accrual tolled the limitations period until May 6, 2012. At summary judgment, the district court concluded that no rule of accrual applied to toll the statute of limitations after May 17, 2011. *Id.* at *9. We agree with the district court's thorough and well-reasoned analysis.

The amended complaint included several allegations aimed at curing the timeliness problem. Specifically, it alleged Davidson "continued to represent [p]laintiffs with regard to the Interdonato matter subsequent to October 12, 2010, as evidenced by an invoice from [Davidson] to Houshang [Momenian] for the period December 1, 2010 to May 15, 2011." J.A. 17 ¶ 32. It also alleged that "[d]uring 2011 and early 2012," Houshang Momenian called Davidson "approximately every three months" regarding "the Interdonato matter," asking Davidson "when he would have an opportunity to go before a judge." *Id.* ¶ 33. Davidson's response, according to the amended complaint, was that "he was working on it." *Id.* Reviewing the allegations at the motion to dismiss stage, we found that "calling one's lawyer every three months to check in on a case, and relying on the lawyer's assurances that he was 'working on it,'" *Momenian II*, 878 F.3d at 390, satisfied *Iqbal*'s plausibility standard such that the plaintiffs' claims may not have accrued before May 6, 2012, *id.* at 391 (referencing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

At summary judgment, after discovery concluded, the district court identified two evidentiary roadblocks that foreclosed the alleged timeliness theory. First, "[p]laintiffs were placed on notice of their claims in May 2011—a full year before the earliest date their claims could have accrued and still have been timely filed—when Mr. Momenian received a letter dated May 17, 2011, from [Davidson] discussing the [2009 Litigation and 2010 Settlement]." *Momenian III*, 2020 WL 999204, at *4. Davidson's May 17, 2011 letter unambiguously states that "the lawsuit was settled during mediation." J.A. 559. Although the letter mentions some miscellaneous tasks that Davidson completed after the 2010 Settlement, it is clear those tasks were simply loose ends tied to the 2010 Settlement, not ongoing work related to any dispute with the Interdonatos. *See Momenian III*, 2020 WL 999204, at *4. Any contrary interpretation is plainly foreclosed by Davidson's statement in the same letter that, "if you desire for me to perform additional services, it will be necessary for us to enter into a new agreement which sets forth the terms and scope of the anticipated representation." J.A. 560. Accordingly, the plaintiffs "were placed at least on inquiry notice, if not actual notice, of their claims against [Davidson] upon receipt of the [May 17, 2011] letter." *Momenian III*, 2020 WL 999204, at *4.[1]

Second, the plaintiffs argue that, despite the May 17, 2011 letter, Davidson led Momenian to believe he was still working on claims against the Interdonatos during telephone calls in 2011 and 2012. But the district court correctly concluded that the plaintiffs "have identified no factual support for their allegations regarding the frequency and substance of the telephone calls between

---

[1] *See Momenian II*, 878 F.3d at 388 ("Where an injury is by its nature not readily apparent, D.C. courts apply a more forgiving 'discovery rule' under which a claim accrues only if a plaintiff has actual or inquiry notice of a cause of action, regardless of when the injury occurred.") (citation omitted).

3

Mr. Momenian and [Davidson]" after the 2010 Settlement. *Momenian III*, 2020 WL 999204, at *6.

At summary judgment, the plaintiffs cannot rest on "mere allegations, but must set forth by affidavit or other evidence specific facts." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations omitted). At Houshang Momenian's deposition, counsel repeatedly asked him what conversations he had with Davidson after the 2010 Settlement and what, if any, specific actions Davidson said he would take with respect to any dispute with the Interdonatos. In response, Momenian made only general assertions that any post-2010 Settlement "conversation with – Mr. Davidson was promising . . . . There wasn't a bad conversation." J.A. 223. Momenian's vague responses to direct questions about the substance of any post-2010 Settlement conversations with Davidson "lack any semblance of factual specificity that would support" the amended complaint's allegations. *Momenian III*, 2020 WL 999204, at *7. Accordingly, the district court correctly concluded there was no genuine dispute that, after May 17, 2011, Davidson neither performed—nor told the plaintiffs he would take—any specific action regarding any dispute with the Interdonatos.

Moreover, the district court also correctly determined that the May 17, 2011 letter foreclosed any claim that either the lulling doctrine or the continuous representation doctrine tolled the statute of limitations. Lulling requires a plaintiff to demonstrate that the "defendant . . . [did] something that amounted to an affirmative inducement to plaintiff[] to delay bringing action." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986) (quoting *Hornblower v. George Wash. Univ.*, 31 App. D.C. 64, 75 (D.C. Cir. 1908)). Davidson "did exactly the opposite, clearly communicating to [p]laintiffs in May 2011 that the [2009 Litigation] was settled in full, and that [his] representation of the Momenians in the matter had terminated." *Momenian III*, 2020 WL 999204, at *8.

On appeal, the plaintiffs argue that a January 31, 2013 recorded conversation between Davidson and Houshang Momenian creates a genuine dispute of material fact as to whether Davidson lulled the Momenians into inaction.[2] Even though the plaintiffs failed to raise the January 2013 conversation in their summary judgment briefing in district court or in their Rule 56.1 statement of material facts, the district court nonetheless addressed why the January 2013 conversation failed to support any claim of lulling. *See Momenian III*, 2020 WL 999204, at *8 n.7. We agree with the district court's well-reasoned analysis. First, the January 2013 conversation made clear that Davidson "was explaining that Mr. Momenian did not give up any rights to assert

---

[2] The Momenians had attached a transcription of Houshang Momenian's secretly recorded January 31, 2013 conversation with Davidson as an exhibit to their opposition to Davidson's motion to dismiss the amended complaint. *See* Exhibit 2 to Pls. Opp. to Mot. to Dismiss, *Momenian v. Davidson*, No. 15-cv-00828, ECF No. 18-1 (D.D.C. filed Mar. 28, 2016). The district court treated the transcript as "incorporated into the [amended] [c]omplaint" because the Momenians "refer[red] to the conversation in their [a]mended [c]omplaint." *Momenian I*, 209 F. Supp. 3d at 296 n.5. According to the transcript, Davidson said that Momenian "did not forfeit any of [his] rights on [the Interdonato dispute]." J.A. 18 ¶ 38. The amended complaint described the conversation as one of many in which Davidson led Momenian to believe that he was continuing to work on claims against the Interdonatos. *See Momenian II*, 878 F.3d at 386–87. But on remand the evidence failed to substantiate the alleged pattern and content of phone conversations and Davidson's May 17, 2011 letter undercut the lulling claim.

4

defenses if the Interdonatos brought any future litigation, but he repeatedly explained, and Mr. Momenian clearly understood, that the Momenians had settled the [2009 Litigation] in full and given up their affirmative claims against the Interdonatos." *Id.* Second, the January 2013 conversation "could not have induced [p]laintiffs to delay bringing the instant action" because they retained independent counsel and settled the 2012 Litigation with the Interdonatos well before the January 2013 conversation occurred. *Id.* Accordingly, the January 2013 conversation does not constitute evidence that Davidson attempted to lull the plaintiffs into inaction either before or after that conversation occurred.

Finally, the continuous representation doctrine states that "a legal malpractice claim will not accrue until the representation is terminated." *Wagner v. Sellinger*, 847 A.2d 1151, 1155 (D.C. 2004). In this respect, the "May 2011 [l]etter unequivocally terminated [Davidson]'s representation of the Momenians regarding the [2009 Litigation]" and the plaintiffs never asked Davidson to perform any further legal work regarding the 2009 Litigation, or the Interdonatos, after the 2010 Settlement. *Momenian III*, 2020 WL 999204, at *9.

Simply put, because the plaintiffs failed to point to any evidence of (1) the substance, timing or frequency of the alleged post-2010 Settlement telephonic conversations with Davidson or (2) any affirmative lulling on Davidson's part, the question that prompted our remand at the motion to dismiss stage has been resolved. The record evidence plainly fails to substantiate the claim of diligence on Houshang Momenian's part or of misleading assurances on Davidson's part. Accordingly, "no rule of accrual tolled the statute of limitations, which ran [almost] a full year before [p]laintiffs filed this action." *Momenian III*, 2020 WL 999204, at *9.

For the foregoing reasons, the judgment of the district court is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/

Daniel J. Reidy
Deputy Clerk

5